[Cite as *State v. Sidey*, 2019-Ohio-5169.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

 PLAINTIFF-APPELLEE,     CASE NO.  1-19-32

 v.

COREY R. SIDEY,        O P I N I O N

 DEFENDANT-APPELLANT.

---

**Appeal from Lima Municipal Court**
**Trial Court No. 19TRC01507**

**Judgment Affirmed**

**Date of Decision:  December 16, 2019**

---

APPEARANCES:

 *John C. Huffman* **for Appellant**

 *Lisa R. Bradley* **for Appellee**

Case No. 1-19-32

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Corey R. Sidey ("Sidey"), appeals the April 10, 2019 judgment entry of the Lima Municipal Court denying his motion to suppress evidence. For the reasons that follow, we affirm.

{¶2} This case stems from a February 19, 2019 traffic stop of the vehicle operated by Sidey after Sergeant Alec Cooper ("Sgt. Cooper") of the Delphos Police Department received radio contact from another officer that Sidey's vehicle had no front license plate. As a result of the traffic stop, Sidey was cited for operating a vehicle under the influence of alcohol or drugs-OVI ("OVI") in violation of R.C. 4511.19(A)(1)(a), (d) a first-degree misdemeanor and for display of license plates, registrations, marks, placards, and stickers in violation of R.C. 4503.21(A)(1), a minor misdemeanor. (Doc. No. 1).

{¶3} On February 20, 2019, Sidey appeared for arraignment and entered pleas of not guilty. (Doc. No. 4).

{¶4} On March 26, 2019, Sidey filed a motion to suppress evidence arguing that Sgt. Cooper did not have a reasonable, articulable suspicion to stop Sidey based on the observations of another officer and that his testimony alone was insufficient to establish reasonable articulable suspicion.[1] (Doc. No. 12). After a hearing on

---

[1] The State did not file a response to Sidey's motion to suppress evidence.

April 10, 2019, the trial court denied Sidey's motion to suppress evidence. (Doc. No. 14).

{¶5} On April 29, 2019, Sidey withdrew his pleas of not guilty and entered a no-contest plea, under a negotiated-plea agreement, to OVI in violation of R.C. 4511.19(A)(1)(d). (Doc. No. 18). In exchange for his change of plea, the State agreed to dismiss the other charges. (Doc. No. 17, 18, 19). The trial court accepted Sidey's no-contest plea, found him guilty, and dismissed the other charges. (Doc. Nos. 17, 18, 19).

{¶6} Sidey filed his notice of appeal on May 29, 2019. (Doc. No. 20). He raises one assignment of error for our review.

### Assignment of Error

**The Trial Court Erred When It Overruled Defendant's Motion To Suppress By Determining That Based Upon The Evidence Adduced At The Hearing, There Was Reasonable Suspicion To Stop Defendant And That The Testimony Of The Officer Initiating The Stop, Alone, Was Sufficient To Establish Reasonable Suspicion For The Stop.**

{¶7} In his sole assignment of error, Sidey argues that the trial court erred by denying his motion to suppress evidence. In particular, he argues that the trial court erred by concluding that Sgt. Cooper had reasonable, articulable suspicion to believe that Sidey had committed a display of license plates, registrations, marks, placards, and stickers vehicle violation. We disagree.

*Standard of Review*

{¶8} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997), *superseded by state regulation on other grounds*, *State v. Schmehl*, 3d Dist. Auglaize No. 2-05-33, 2006-Ohio-1143, ¶ 22.

*Analysis*

{¶9} The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures, and any evidence that is obtained during an unlawful search or seizure will be excluded as "fruits" of an unconstitutional search *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961). The State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement and that it meets Fourth

Amendment standards of reasonableness at a suppression hearing. *City of Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), at paragraph two of the syllabus; *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978). *See City of Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999). An investigatory stop is one exception to the warrant requirement of the Fourth Amendment. *State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 13, citing *State v. Keck*, 3d Dist. Hancock No. 5-03-27, 2004-Ohio-1396, ¶ 11, *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), and *Berkemer v. McCarty*, 468 U.S. 420, 439-440, 104 S.Ct. 3138 (1984). When the constitutionally-challenged-investigatory stop involves

> a vehicle, an officer must, at a minimum have either: (1) a reasonable suspicion, supported by specific and articulable facts, that criminal behavior has occurred, is occurring, or is imminent; or (2) a reasonable suspicion, supported by specific and articulable facts, that the vehicle should be stopped in the interests of public safety.

*State v. Burwell*, 3d Dist. Putnam No. 12-09-06, 2010-Ohio-1087, ¶ 10, citing *State v. Moore*, 3d Dist. Marion No. 9-07-60, 2008-Ohio-2407, ¶ 10, *State v. Andrews*, 3d Dist. Auglaize No. 2-07-30, 2008-Ohio-625, ¶ 8, *State v. Chatton*, 11 Ohio St.3d 59, 61 (1984), *State v. Purtee*, 3d Dist. Logan No. 8-04-10, 2006-Ohio-6337, ¶ 9, and *State v. Norman*, 136 Ohio App.3d 46, 53-54 (3d Dist.1999).

{¶10} "An officer's 'reasonable suspicion' is determined based on the totality of the circumstances." *Id.* at ¶ 11, citing *Moore* at ¶ 11, citing *Andrews* at ¶ 8, citing *State v. Terry*, 130 Ohio App.3d 253, 257 (3d Dist.1998), citing *State v.*

*Andrews*, 57 Ohio St.3d 86, 87 (1991). The question whether a traffic stop violates the Fourth Amendment involves an objective assessment of an officer's actions in light of the facts and circumstances known to the officer at the time he or she initiates the traffic stop. *Dayton v. Erickson*, 76 Ohio St.3d 3, 6 (1996), citing *United States v. Ferguson*, 8 F.3d 385, 388 (6th Cir.1993). The officer must be able to point to "'Specific and articulable facts' that will justify an investigatory stop by way of reasonable suspicion include: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances." *Purtee* at ¶ 9; *State v. Gaylord*, 9th Dist. Summit No. 22406, 2005-Ohio-2138, ¶ 9; *Bobo*, 37 Ohio St.3d at 178-79; *State v. Davison*, 9th Dist. Summit No. 21825, 2004-Ohio-3251, ¶ 6.

{¶11} The officer can rely on his or her personal observations or information transmitted through dispatch or a flyer of a traffic violation or criminal activity. *Weisner*, 87 Ohio St.3d at 297, citing *United States v. Hensley*, 469 U.S. 221, 231, 105 S.Ct. 675, 681 (1985). *State v. Bailey*, 3d. Dist. Logan No. 8-07-02, 2008-Ohio-2254, ¶ 17. *State v. Devanna*, 3d Dist. Auglaize No. 2-04-12, 2004-Ohio-5096, ¶ 13. When an officer relies on information from other officers, the State must show that the officer (who provided that information) had a valid reasonable suspicion of a traffic violation or criminal activity. *See State v. Wortham*, 145 Ohio App.3d 126, 130 (2d Dist.2001), citing *Hensley* at 221 and *Maumee* at 297.

**{¶12}** Here, in addition to a charge of OVI, Sidey was cited for a display of license plates, registrations, marks, placards, and stickers violation. Sgt. Cooper testified that he had observed Sidey operating his vehicle above the posted-speed limit; although, he was unable to "clock" Sidey's speed at the time or pace his vehicle because his patrol vehicle was at a "dead stop." (Apr. 10, 2019 Tr. at 5-7, 10, 11). Consequently, Sgt. Cooper radioed his partner—Officer Chris Hamacher ("Officer Hamacher")—to determine if he was able to "clock" Sidey's speed. (*Id.* at 9). Officer Hamacher advised Sgt. Cooper that Sidey had "no front license plate on the vehicle." (*Id.* at 6-7, 9, 11). Thus, based upon Officer Hamacher's information, Sgt. Cooper initiated the traffic stop and requested Sidey's license, proof of insurance, and vehicle registration.[2] (*Id.* at 7-8).

**{¶13}** Sidey argues that because Sgt. Cooper did not personally observe or visually verify the absence of a license plate affixed to the front bumper of Sidey's vehicle, Officer Hamacher's testimony was required at the suppression hearing. We disagree. Contrary to Sidey's contention, an officer may rely upon information collectively known to the law enforcement officers involved in the search or investigation. *See State v. Cook*, 65 Ohio St.3d 516, 521 (1992). "An officer need not have knowledge of all the facts necessary to justify an investigatory stop, as long

---

[2] Officer Hamacher arrived at Sidey's traffic stop in the midst of Sgt. Cooper and Sidey's conversation. (*Id.* at 15). While speaking with Sidey (about the license plate) with Officer Hamacher to his left, Sgt. Cooper "detected the odor of alcohol." (*Id.* at 8). Sidey admitted to consuming alcohol at the bar while acting as a designated driver for the passenger of the vehicle. (*Id.* at 8-9).

as the law enforcement body as a whole possesses such facts and the detaining officer reasonably relies on those who possess the facts." *Cook*, 65 Ohio St.3d at 521, citing *State v. Henderson*, 51 Ohio St.3d 54 (1990), *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031 (1971), *Hensley*, 469 U.S. at 221. *See Bailey*, 2008-Ohio-2254, at ¶ 17, citing *Cook*, 65 Ohio St.3d at 521 (concluding that "just as in the case of a radio dispatch that justifies an investigatory stop, it is the collective knowledge of the law-enforcement officers that allows the arresting officer to rely upon those facts to effect an arrest"). The relevant inquiry is whether the law-enforcement community as a whole has complied with the Fourth Amendment; the entire system is required to possess facts justifying the stop or arrest, even though the arresting officer does not have those facts. *Henderson*, 51 Ohio St.3d at 57, quoting 1 LaFave & Israel, Criminal Procedure, Section 3.3(e) (1984).

R.C. 4503.21 provides in its pertinent part:

(A)(1) No person who is the owner or operator of a motor vehicle shall fail to display *in plain view* on the front and rear of the motor vehicle a license plate that bears the distinctive number and registration mark assigned to the motor vehicle by the director of public safety, including any county identification sticker and any validation sticker issued under sections 4503.19 and 4503.191 of the Revised Code * * *

(Italics added.) Here, Sidey argues that his license plate displayed in the front windshield complied with the requirement of the statute, we disagree. As Sgt. Cooper approached Sidey's vehicle, he was careful to stay behind the "B pillar"

because the vehicle had been modified (i.e., "jacked up and raised"). (Apr. 10, 2019 Tr. at 13). As such, Sgt. Cooper could not see the license plate "tucked in between the dash and the windshield" until Sidey pointed it out. (*Id.* at 13-14). *See State v. Anderson*, 11th Dist. Lake No. 2017-L-127, 2018-Ohio-2455, ¶ 17, (concluding that because the officer could not see the license plate "propped up in the front windshield" until he approached the vehicle, the license plate was not "in plain view" within the meaning of R.C. 4503.21(A)(1)). Under the facts before us, Sidey's license plate was not displayed "in plain view," and not in compliance with the statutory scheme. Thus, Sgt. Cooper's corroboration of Officer Hamacher's observations eradicated the need for Officer Hamacher's testimony at the motion hearing.

{¶14} Based on the foregoing and under the totality of the circumstances, we conclude that Sgt. Cooper possessed a "reasonable, articulable suspicion" which was supported by "specific and articulable facts" that justified this investigatory stop for a display of license plates, registrations, marks, placards, and stickers violation. The trial court's findings are supported by competent, credible evidence. The trial court did not err by overruling Sidey's motion to suppress evidence.

{¶15} Accordingly, Sidey's assignment of error is overruled.

{¶16} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**jlr**